UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JUDITH BETZER, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>          v.<br><br>FRONTIER CREDIT UNION,<br><br>     Defendant. | Case No. 4:25-cv-00376-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Judith Betzer sued Frontier Credit Union on behalf of herself and all others similarly situated. *Complaint*, Dkt. 1-1. She alleges that Frontier violated the Electronic Fund Transfer Act and Regulation E of that Act. *Compl.*, Dkt. 1-1; *see* 15 U.S.C. § 1693, *et seq.*; 12 C.F.R. § 1005.1, *et seq.* Frontier moves to dismiss Betzer's complaint for failure to state a claim. *Mot. to Dismiss*, Dkt. 2. The Court heard oral argument on the motion to dismiss on March 12, 2026. For the reasons explained below, the Court will deny the motion.[1]

---

[1] This decision will also govern the same issues raised in *Tucker v. Frontier Credit Union*, No. 4:26-cv-120, pursuant to the parties' stipulation in that case.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

There is more to a simple debit card transaction than meets the eye. When a consumer swipes the card, the bank authorizes the transaction by placing a hold on the consumer's account. This hold lowers the account's "available" balance even though the transaction is not yet finalized. Later, the bank settles the transaction by paying the seller. Only when the account settles does the "actual" balance change to reflect the cost of the transaction. Days could pass between authorization and settlement.

Financial institutions assess overdraft fees by two different methods: one using the account's available balance and the other using the actual balance. Frontier, a credit union that offers its customers banking services, uses the available balance. *Compl.* at 3, Dkt. 1-1 at 4; Dkt. 1-1 at 30-31. When Betzer became a Frontier member, she signed several documents, including a form labeled "What You Need to Know About Overdrafts and Overdraft Fees," referred to as an "Opt-In Form." *See* Dkt. 1-1 at 28-31. In it, Frontier stated that "[a]n overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." Dkt. 1-1 at 28. By signing it, Betzer chose to have the ability to overdraw funds from her checking account on ATM and one-time debit card transactions without those transactions being declined for insufficient funds.

**MEMORANDUM DECISION AND ORDER - 2**

*See* Dkt. 1-1 at 30-31. Rather than decline the transaction, by this arrangement Frontier would cover the amount overdrawn to allow the transaction to be completed. *See* Dkt. 1-1 at 30-31. The Opt-In Form was one page, but three other pages were attached to it and provided detail about the overdraft services Frontier offered. Dkt. 1-1 at 28-31.

Frontier modeled its Opt-In Form on the Model Form A-9[2] created by the Federal Reserve Board as a template overdraft agreement for institutions to use to satisfy their legal notice requirement. *See* 74 Fed. Reg. 59,033, 59,054. This requirement mandates that before Frontier and other institutions like it charge overdraft fees on certain transactions, they "provide[] the consumer with a notice in writing, or if the consumer agrees, electronically, segregated from all other information, describing the institution's overdraft service." 12 C.F.R. 1005.17(b)(1)(i).

---

[2] The Court takes judicial notice of the existence and content of this form. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866, n.1 (9th Cir. 2004) (providing that the Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming motions to dismiss into motions for summary judgment). The Court may also examine documents referred to in the complaint, although not attached to it, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005).

**MEMORANDUM DECISION AND ORDER - 3**

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. It must contain sufficient factual matter, which, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

## ANALYSIS

In moving to dismiss Betzer's complaint, Frontier asserts that both Betzer's regulatory and unjust enrichment causes of action fail to state a claim upon which

MEMORANDUM DECISION AND ORDER - 4

relief may be granted. *See Mot. to Dismiss* at 11-18, Dkt. 2-1 at 11-18. For the first of these assertions, Frontier makes three arguments in the alternative: (1) the language Frontier used in its Opt-In Form complied with the requirement that it describe its overdraft services; (2) the Opt-In Form and three attached pages, when considered together, constituted a notice segregated from all other information that described Frontier's overdraft services; (3) and because Frontier used Model Form A-9 as a template for its Opt-In Form, it is shielded from Betzer's suit by a safe harbor provision. *See Mot. to Dismiss* at 11-18, Dkt. 2-1 at 11-18. The Court will address each in turn in ruling on Frontier's motion to dismiss Betzer's regulatory claim and then proceed to rule on Frontier's motion as to Betzer's unjust enrichment claim.

## 1.    Betzer's Regulatory Claim

### a.    The Opt-In Form Language

Frontier describes its overdraft services as "when you do not have enough money in your account to cover a transaction, but we pay it anyway." Dkt. 1-1 at 28. Betzer argues that this language violates the requirement that Frontier "describe[e]" its overdraft service in a "clear and readily understandable manner" because it left her uncertain whether an overdraft is determined in reference to her actual or available balance and unclear whether the overdraft is calculated at the

MEMORANDUM DECISION AND ORDER - 5

time a transaction is authorized or settled. *See* 12 C.F.R. §§ 1005.17(b)(1)(i); 1005.4(a)(1). At first blush, Betzer's argument is well-founded. Similar challenges to the same language used by Frontier have been found to be plausible in several cases around the country. *See Miller v. Del-One Fed. Cred. Union*, 2022 WL 2817875, at *2 (D. Del. Jul. 19, 2022); *Ramirez v. Baxter Credit Union*, 2017 WL 118859, *7-8 (N.D. Cal. Jan. 12, 2017); *Foster v. Pelican State Credit Union*, 2023 WL 6165698, at *11-12 (M.D. La. Sept. 21, 2023).

Frontier sees it differently. It argues that the language it used came straight from the Model Form A-9 and that this language was a research-based solution for providing enough information to consumers to permit them to knowingly opt-in to overdraft services without being overwhelmed by too much information. *See Mot. to Dismiss* at 11-16, Dkt. 2-1 at 11-16. Given this background, Frontier contends that because it simply adhered to Model Form A-9, Betzer's claim that it failed to adequately describe its overdraft service is not plausible. *See Mot. to Dismiss* at 11-16, Dkt. 2-1 at 11-16.

But the regulation permits a financial institution to customize the Model Form A-9 within certain limits. *Brusati v. Montana Federal Credit Union*, 2025 WL 3205014, *4 (D. Mont. Nov. 17, 2025) (citing 12 C.F.R. § 1005.17(d)). In fact, Frontier altered that model language here in several ways to better fit the

**MEMORANDUM DECISION AND ORDER - 6**

circumstances in which the Opt-In Form was provided. *Compare* 12 C.F.R. § 1005.17(d), Appendix A-9 ("We also offer overdraft protection plans, such as a link to a savings account, which may be less expensive than our standard overdraft practices. To learn more, ask us about these plans."), *with* Dkt. 1-1 at 28 ("We also offer overdraft protection plans referred to as Self Defense, such as a link to your other accounts, which may be less expensive than our standard overdraft practices. For more information, see 'Overdraft Protection Plans (Self-Defense)' on Page 2."). Moreover, because the underlying statute is a "remedial consumer protection" law, it must be "read liberally to achieve the goal of protecting consumers." *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 239 (4th Cir. 2019). Given this history and purpose, a similar line of argument to Frontier's was recently rejected in another case. *Brusati*, 2025 WL 3205014, at *3. This Court reaches the same conclusion here.

### b.    The Opt-In Form and Language in Attached Pages

Frontier next argues that even if the language it used in the Opt-In Form is insufficient, it provided an adequately detailed description of its overdraft service in the three pages it attached to that form. *See Mot. to Dismiss* at 16-18, Dkt. 2-1 at 16-18. Frontier further asserts that these four pages are collectively the notice in which it was required to describe its overdraft service. *See Mot. to Dismiss* at 16-

**MEMORANDUM DECISION AND ORDER - 7**

18, Dkt. 2-1 at 16-18. The problem with this argument is that considering all four pages together as the notice risks running afoul of the requirement that the notice be "substantially similar" to the Model Form A-9. 12 C.F.R. § 1005.17(d). The model is a one-page document designed to serve as a template to inform the consumer about the overdraft service without providing more detail than necessary and risking confusion. A four-page, single-spaced document at least arguably fails to comply with this substantial similarity requirement. *See Virginia is for Movers, LLC v. Apple Federal Credit Union*, 720 F. Supp.3d 427, 448-49 (E.D. Va. 2024).

During oral argument, Frontier claimed it faced an impossible situation: either it could use the model language and be sued for failing to adequately describe its overdraft service, or it could clearly describe that service in additional pages attached to the Opt-In Form and segregated from all other information, but risk violating the substantial similarity requirement. These options, however, are not the only ones available.

The Court asked Betzer's counsel during the argument if she would have sued Frontier if it stated on the Opt-In Form that "an overdraft will be determined upon settlement based upon your available balance." Betzer's counsel responded that if Frontier had used such language, this case would not have been brought. This was not mere speculation from Betzer's counsel either. In *Brusati*, the same counsel

MEMORANDUM DECISION AND ORDER - 8

withdrew a challenge to a financial institution's description of overdraft services where that description identified the account used to determine if an overdraft existed. *Brusati*, 2025 WL 3205014, at \*2. It turns out Frontier does not face an impossible situation. The Court thus declines to dismiss Betzer's claim based on Frontier's description of its overdraft service contained in the pages attached to the Opt-In Form.

### c.    Model Form A-9 Safe Harbor

Nor is Frontier insulated from Betzer's suit by a safe harbor provision for using the Model Form A-9. *See Mot. to Dismiss* at 13-16, Dkt. 2-1 at 13-16. True, such a safe harbor provision exists. 15 U.S.C. § 1693m(d)(1) (shielding institutions from actions taken "in good faith in conformity with any [Board] rule, regulation, or interpretation"). But it applies to protect a financial institution from a suit challenging the form the institution used to provide the notice, not the content of that notice. 15 U.S.C. § 1693m(d)(2) (protecting institutions from "any failure to make disclosure in proper form if a financial institution utilized an appropriate model clause issued by the . . . Board" unless a court determines the model clause is invalid). Here, Betzer sued Frontier for failing to accurately describe its overdraft services—a challenge to the content, not the form of Frontier's notice. *See Brusati*, 2025 WL 3205014, \*5 (noting that plaintiff's allegation that

**MEMORANDUM DECISION AND ORDER - 9**

defendant's form "fails to reflect its services accurately" is a challenge to the substance of the form) (cleaned up). Thus, Betzer's suit is not blocked by the safe harbor provision and can proceed.

## 2.   Betzer's Unjust Enrichment Claim

The Court will not dismiss Betzer's unjust enrichment claim either. Frontier asserts that Betzer failed to state an unjust enrichment claim because a contract governs the parties' relationship and because Betzer's challenge to the Opt-In Form is a regulatory cause of action that cannot render the contract unenforceable. *See Mot. to Dismiss* at 18, Dkt. 2-1 at 18. However, if Betzer demonstrates that the Opt-In Form failed to sufficiently describe Frontier's overdraft service, then she could not have meaningfully consented to the overdraft service and no enforceable contract existed as to that service. *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1245 (11th Cir. 2019) (noting that a Regulation E claim contests whether an opt-in form "give[s the consumer] enough information to give affirmative consent to [the institution]'s overdraft service"). And in the absence of an enforceable contract, Betzer may pursue an unjust enrichment claim. *See Thomas v. Thomas*, 150 Idaho 636, 643 (2011). The Court therefore will deny Betzer's motion to dismiss the unjust enrichment claim.

MEMORANDUM DECISION AND ORDER - 10

**ORDER**

**IT IS ORDERED:**

Defendant's Motion to Dismiss (Dkt. 2) is **DENIED**.

DATED: March 31, 2026

B. Lynn Winmill
U.S. District Court Judge